Therese M. Shanks, Esq. (SBN 12890)
Wade Beavers, Esq. (SBN 13451)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, Nevada 89511
Tel: 775-788-2228  Fax: 775-788-2229
tshanks@fennemorelaw.com; wbeavers@fennemorelaw.com

Andrew K. Stuztman, Esq. (PA Bar No. 72922)
Adam Petitt, Esq. (PA Bar No. 319609)
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Ste. 2600
Philadelphia, PA 19103-7018
Tel: 215-564-8728  Fax: 215-564-8210
AStuztman@stradley.com;apetitt@stradley.com
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| INNOVATIV MEDIA GROUP, INC., a Wyoming corporation; TTP8, LLC, a Delaware limited liability company,<br><br>                     Plaintiffs,<br><br>      vs.<br><br>MICHAEL BEYS; RICHARD DE SILVA; LATERAL U.S. OPPORTUNITIES FUND AI, L.P., a Delaware Limited Partnership; LATERAL U.S. CREDIT OPPORTUNITIES FUND QP, L.P., a Delaware Limited Partnership; LATERAL CREDIT OPPORTUNITIES, LLC, a Delaware limited liability company;  LATERAL INVESTMENT MANAGEMENT, LLC, a Delaware limited liability company; LATERAL FTE FEEDER, LLC, a Delaware limited liability company; LATERAL JUSCOM FEEDER, LLC, a Delaware limited liability company; DOES I-X; ROE Entities, I-X,<br><br>                   Defendants.<br>    -  and –<br>FTE NETWORKS INC., nominal party. | CASE NO.:<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **Direct Breach of Duty of Loyalty;**<br>2. **Derivative Breach of Duty of Loyalty;**<br>3. **Derivative Breach of Fiduciary Duty of Competency;**<br>4. **Abuse of Process;**<br>5. **Aiding and Abetting Breach of Fiduciary Duty;**<br>6. **Civil Conspiracy;**<br>7. **Fraud;**<br>8. **Accounting;**<br>9. **Injunctive Relief;**<br>10. **Receivership;**<br>11. **Violation of Rule 10b-5; and**<br>12. **Constructive Trust.**<br>         - and-<br><br>**JURY DEMAND** |

**VERIFIED COMPLAINT AND SHAREHOLDER DERIVATIVE COMPLAINT**

**JURY DEMANDED**

Plaintiffs INNOVATIV MEDIA GROUP, INC. ("Innovativ") and TTP8, LLC ("TTP8"), by and through counsel of Fennemore Craig, P.C., complain and allege as follows:

**NATURE OF THE DISPUTE**

1.      Plaintiffs bring this direct and derivative shareholder complaint on behalf of themselves and the shareholders of nominal party FTE Networks, Inc. ("FTE") for the blatant breaches of fiduciary duties committed by FTE's current interim Chief Executive Officer and director, defendant Michael Beys ("Beys") and director Richard De Silva ("De Silva").  FTE is a former publicly-traded telecommunications company which now focuses almost exclusively on real estate investments.  As a result of Beys' and De Silva's self-dealings and corporate mismanagement, FTE has squandered the equity created through the Vision acquisition and faces imminent loss of its last viable asset, a real estate portfolio it purchased in 2019 (the "Vision Portfolio").

2.      FTE has reneged upon its obligations to the sellers of the Vision Portfolio by failing to pay the purchase price, failing to pay the $10,000,000 initial down payment and failing to pay the debt FTE assumed as part of the purchase, resulting in substantial portions of the Vision Portfolio being lost to foreclosures.  Beys' and De Silva's malfeasance and corporate mismanagement has also resulted in a receiver being appointed over FTE's subsidiary U.S. Home Rentals, LLC ("USHR"), which administers the Vision Portfolio, but Beys refuses to inform FTE's shareholders of this fact.  Beys' and De Silva's incompetent and fraudulent management of FTE has significantly reduced shareholder equity in FTE.

3.      Capitalizing upon their control of FTE, Beys and De Silva refuse to call a shareholder meeting to elect new directors.  Beys admits that the refusal to call a meeting is because Beys and De Silva do not want to lose control of FTE.  Yet, while FTE remains under Beys' and De Silva's control, shareholders suffer to the direct benefit of Beys and De Silva.  FTE's stock has

27154001.1/057702.0001

been delisted by the New York Stock Exchange ("NYSE"), and Beys and De Silva have done nothing to rectify this situation, including, but not limited to, complete audited financial statements for 2021, 2021 and year to date financials, bringing Securities and Exchange Commission ("SEC") filings up to date, or undertaking any action to preserve liquidity of FTE's assets.

4.    Beys and De Silva have illegally commandeered control of FTE, failed to account to shareholders, are operating without authority and are ignoring statutory and fiduciary obligations to FTE shareholders. In a blatant attempt to remain in control of FTE, in order to cover up their fraud, negligence, misconduct and other misdeeds, and enable their personal conversion of FTE assets, Beys and de Silva have squandered FTE funds launching numerous specious, retaliatory and vexatious lawsuits, in multiple jurisdictions, against any FTE shareholders who as much as requests information on the Company while failing to devote resources to operations. Beys has also encouraged third party private entities and public authorities to file lawsuits against FTE and/or its shareholders, in a flagrant breach of his duties of loyalty and competency.

5.    In developments that preceded the Vision Portfolio acquisition, and which were not fully disclosed to FTE shareholders, in early 2019, multiple FTE former directors and officers were indicted and ultimately convicted of fraud and embezzlement from FTE.  While FTE's legacy issues have had negative effects, this shareholder derivative action focuses on De Silva's and Bey's breaches of their duties of loyalty and corporate mismanagement that began in the fourth quarter of 2019.  De Silva's and Bey's wrongful conduct stems from their desire to protect a transaction in which De Silva, who was a director at the time, foreclosed on FTE's only viable subsidiary at that time for the benefit of entities managed and/or controlled by De Silva and to the direct detriment of FTE's then shareholders.  To cover up this breach of his duty of loyalty and conflicts of interest, De Silva induced FTE to purchase the Vision Portfolio in 2019.

6.    The Vision Portfolio consists of rental homes located in multiple states.  Initially, it was being restructured as a lease-to-own portfolio.  However, after the attorney generals of multiple states initiated consumer rights litigation against the Vision Portfolio, the Vision Portfolio was restructured to focus on a pure rental model in order to be brought into compliance with consumer protection laws.

3

7.     When FTE acquired the Vision Portfolio in 2019, Beys and De Silva (and FTE's other directors) were well aware that the Vision Portfolio was mired in litigation. Multiple schedules and exhibits attached to the Purchase Agreement detailed the significant amount of debt and pending and prospective liabilities.  In addition to due diligence conducted by FTE's legal team at Troutman Pepper, and eager to keep his self-dealing under the radar, De Silva also authored, under the auspices of his investment fund, Lateral Investment Management, LLC ("Lateral"), an investment memorandum which expressly stated that despite the litigation, the Vision Portfolio was still substantially valuable, acknowledging that FTE's only value at the time was its NYSE listing.

8.     Throughout 2020 and 2021, FTE participated in litigation involving the Vision Portfolio and never sought to rescind the transaction, which it publicly announced with great fanfare, nor were requests made for indemnification within the 24-month window called for in the Vision Purchase Agreement.  In fact, to the exact opposite, Beys ratified the purchase by signing a second amendment to the purchase agreement for the Vision Portfolio in the spring of 2021 under which the sellers generously agreed to further defer the payment of their Promissory Notes and released their preferential security in the Vision Portfolio to help FTE grow in value.

9.     FTE has not held a shareholder meeting since 2018.  Beys and De Silva have been operating without shareholder consent since 2019.  The issues and claims in this lawsuit began to be formally asserted after filed a  12/31/2019 Form 10-K on 11/05/2020, and shareholders began to question Beys and De Silva's conduct.

10.     When it became apparent that Beys and De Silva were not doing anything to bring FTE back into compliance with the NYSE so that its stock could be relisted, and were not going to file 10-K's or 10-Q's for the years 2020 and 2021, nor work on getting updated financials to the shareholders, Innovativ began asking questions.  Beys and De Silva, however, refused to respond. When FTE would not provide Innovativ with even the very limited information it requested and was entitled to under the Nevada business statutes, Innovativ contacted additional FTE shareholders to obtain any information they might have on FTE. Although Beys and De Silva refused to respond to Innovativ's inquiries, FTE's sole remaining independent director, Joseph

Cunningham ("Cunningham"), did respond and provided Innovativ with information about FTE that should have been publicly available to shareholders.

11.   Innovativ learned that Beys and De Silva were proposing to transfer valuable litigation claims (the "MCA claims") to De Silva and/or the Lateral Entities in exchange for a $2,000,000 investment in FTE, which represents a small fraction of these claims' value, and wanted to grant De Silva and/or the Lateral Entities preferred voting stock that would ensure his permanent voting control of FTE and de facto ownership of the Vision Portfolio. Innovativ organized a group of FTE shareholders, representing a majority of FTE's issued and outstanding common stock, to amend to FTE's Bylaws ("Amendment") to prohibit stock dilution without shareholder consent.

12.   Upon notice of the Amendment, Beys and De Silva immediately froze out Cunningham from any FTE business activity and threatened to sue Cunningham for communicating with shareholders unless Cunningham agreed to resign and waive all claims against Beys and De Silva. Beys and De Silva continue to refuse to allow Cunningham to participate in meetings of the directors, and have brought a frivolous RICO lawsuit against him for his communications with the shareholders.

13.   Innovativ formally requested Beys and De Silva schedule the long overdue and required shareholder meeting. Beys and de Silva have refused to comply and instead embarked on a scorched earth campaign against FTE shareholders initiating numerous, frivolous lawsuits in multiple jurisdictions against any FTE shareholders they believe might oppose them, all to prevent FTE shareholders from compelling a shareholder meeting and to disenfranchise FTE's largest shareholders from voting their shares. Beys and De Silva admit that the reason they do not want to call a shareholder meeting is because the shareholders will remove them as directors.

14.   To avoid calling a shareholder meeting, Beys and De Silva have alleged, under oath, in multiple jurisdictions, that the shareholders who dare to oppose Beys' and De Silva obtained their stock by "fraud." If the allegations in Beys and De Silva's filings are true, then Beys and De Silva admit that they committed a massive breach of fiduciary duty by not only purchasing the Vision Portfolio, but also by continuing to ratify that decision through 2021. If

Beys' allegations are true, Beys further admits that he has committed corporate mismanagement by failing to conduct due diligence on the transaction.

15.     Notably, it was not until 2022 and after FTE shareholders began to request information and filed the Amendment and requested a shareholder meeting that Beys and De Silva began arguing that the Vision Portfolio was a bad investment and they were not aware of its legal issues. Beys and De Silva made expressly contrary statements in multiple filings with the SEC in 2019, 2020 and 2021.  Either Beys and De Silva are lying under oath to multiple courts, or they have lied to the SEC.

16.     Beys and De Silva's admissions that they do not want to call a shareholder meeting simply because they will be voted out is another basis on which they admit they are engaged in self-dealing.  It is not, however, the only one.  The real reason Beys and De Silva do not want to be voted as directors is because De Silva wants to acquire valuable MCA claims and control over the Vision Portfolio for his own personal interests and to the detriment of FTE's shareholders in the exact manner De Silva was able to acquire FTE's former subsidiary in the fall of 2019 in a "Loan to Own" scheme.  De Silva's ability to do this, however, was thwarted by the Amendment to the bylaws in February 2022.  Beys and De Silva refuse to recognize the validity of that amendment and have now sued the shareholders who signed it in multiple forums.  Importantly, Beys and De Silva admit that the aim of this litigation is not to rescind the Vision Portfolio transaction, but to get the shareholders to give back their shares of FTE stock so that these shareholders will not vote Beys and De Silva out.  In every forum, Beys and De Silva only request that the shares be transferred back and that FTE keep the assets of the Vision Portfolio.

17.     While Beys and De Silva have been protecting their own interests to the direct detriment of the shareholders, they have been committing corporate waste and mismanagement of FTE's assets.  Specifically, Beys, through his own direct neglect and failure to pay taxes on FTE's assets, has allowed FTE's assets to be foreclosed upon by third parties.  A receiver has been appointed over FTE's only viable subsidiary, USHR, a fact which Beys has failed to report to FTE's shareholders.  Beys is refusing to follow up on viable legal claims which FTE has against predatory lenders and related to its former officers' embezzlement but continues to file frivolous

6

litigation against any shareholder which may challenge his authority.  Beys and De Silva have also assigned a portion of the valuable MCA legal claims that FTE holds to one of De Silva's entities, and De Silva controls another entity which is helping to fund Beys' and De Silva's frivolous litigation against shareholders.  This all is to the direct detriment of the shareholders, and the direct personal benefit of De Silva and Beys, in violation of their fiduciary duties. Beys and de Silva have sold collateral assets in a subsidiary LLC designated for a FTE creditor to pays Bey's large salary, which was never authorized by the compensation committee and, on information and belief, failed to disclose FTE payments to Bey's law firm.

18.     Beys and De Silva have done and continue to do nothing to garner value for FTE's shareholders, but instead spend their time protecting their own self-interests.   Accordingly, Plaintiffs bring this current complaint for direct and derivative breaches Beys' and De Silva's breaches of fiduciary duty, and for the harm caused by Beys' and De Silva's fraudulent conduct.

## PARTIES AND JURISDICTION

19.     Innovativ is a Wyoming corporation, whose principal place of business is located in New Mexico, and who owns at least 500,000 shares of common stock of FTE.

20.     TTP8 is a Delaware limited liability company, whose principal place of business is located in Delaware.

21.     FTE is a Nevada corporation, registered to do business at all times in the State of Nevada.

22.     On information and belief, Beys is a resident of New York, and is a current director and the interim Chief Executive Officer ("CEO") of FTE.

23.     On information and belief, De Silva is a resident of California,  is a current director of FTE.

24.     On information and belief, Lateral U.S. Credit Opportunities AI, L.P. is a Delaware limited partnership with its principal place of business in California.

25.     On information and belief, Lateral U.S. Credit Opportunities Fund Q.P., L.P. is a Delaware limited partnership with its principal place of business in California.

7

26.     On information and belief, Lateral Credit Opportunities, LLC is a Delaware limited liability company with its principal place of business in California.

27.     On information and belief, Lateral Investment Management, LLC is a Delaware limited liability company with its principal place of business in California.

28.     On information and belief, Lateral Juscom Feeder, LLC is a Delaware limited liability company with its principal place of business in California.

29.     On information and belief, Lateral FTE Feeder, LLC, is a Delaware limited liability company with its principal place of business in California.

30.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this complaint alleges claims arising under federal statute.

31.     This Court has supplemental jurisdiction of the remaining claims pursuant to 28 U.S.C. § 1367.

32.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b), because FTE is a resident of Nevada, Beys and De Silva's wrongful conduct has been aimed at shareholders of a Nevada corporation, some of whom also reside in Nevada, and as officers of FTE, this Court has personal jurisdiction over Beys and De Silva.

## GENERAL ALLEGATIONS

**I.     THE PARTIES, THE ENTITIES, AND THE NAMES THIS COURT
        NEEDS TO KNOW.**

33.     Originally incorporated as Beacon Enterprise Solutions Group, Inc., FTE is a Nevada corporation.

34.     De Silva manages and/or indirectly controls the following defendants that are collectively referred to as the "Lateral Entities":

     a.   Lateral Juscom Feeder, LLC;

     b.   Lateral Investment Management, LLC;

     c.   Lateral FTE Feeder, LLC;

     d.   Lateral U.S. Credit Opportunities Fund QP, L.P.;

     e.   Lateral Credit Opportunities, LLC; and

f.   Lateral U.S. Credit Opportunities Fund AI, L.P.

35.     Cunningham is a current director of FTE.

36.     Non-party Benchmark Builders, LLC ("Benchmark") is formerly a wholly-owned subsidiary of FTE.

37.     On information and belief, Benchmark is now wholly-owned by one or more of the Lateral Entities.

38.     Non-parties Alexander and Antoni Szkaradeks (the "Szkaradeks") are shareholders of FTE who, on information and belief, hold and/or held approximately 41% of the outstanding shares of FTE.

39.     The Szkaradeks obtained their shares in FTE in December 2019 in exchange for an asset sale of a multistate valuable real estate portfolio called the "Vision Portfolio."

40.     To manage and oversee the Vision Portfolio, FTE created a new wholly-owned subsidiary called U.S. Home Rentals, LLC ("USHR").

41.     The following chart explains FTE's current management and subsidiary status:



42.     Non-party Suneet Singal ("Singal") introduced De Silva to the Szkaradeks in the fall of 2019, which ultimately resulted in the Szkaradeks selling the Vision Portfolio to FTE.

43.     Innovativ purchased 500,000 shares of FTE stock from TTP8 in May 2020.  In the fall of 2021, Innovativ purchased additional shares of stock from the Szkaradeks, but FTE refuses to recognize this transaction.

## II.     WHAT DE SILVA WANTS TO PROTECT:  BENCHMARK

44.     De Silva's breaches of his fiduciary duties arise from his scheme to have the Lateral Entities obtain Benchmark Builders, Inc., which was FTE's former most valuable asset, for a fraction of its value, and to execute that same and/or similar scheme to obtain the Vision Portfolio, FTE's current only valuable asset.

### A.     THE LATERAL ENTITIES' LOAN.

45.     In 2015, FTE borrowed money from certain of the Lateral Entities (the "Lateral Loan").  This loan was secured by certain of FTE's assets.

46.     In 2017, FTE acquired Benchmark for approximately $74,245,000.00.   On information and belief, Benchmark is currently valued in excess of $100,000,000.00.

47.     When FTE acquired Benchmark, FTE pledged Benchmark as additional security for the Lateral loan.  On information and belief, this pledge did not grant the Lateral Entities a right of strict foreclosure.

48.     On information and belief, the Lateral Entities' loan was only for a fraction of the value of Benchmark.

### B.     DE SILVA CAPITALIZES UPON FTE'S INTERNAL TURMOIL.

49.     In early 2019, FTE shareholders discovered various misappropriations and other wrongful conduct committed by FTE's then current board and officers.  This board and officers did not include, at that time, Beys or De Silva, although, on information and belief, De Silva was involved with the appointment of many of these individuals.

27154001.1/057702.0001

50.     On information and belief, De Silva was involved in the hiring and/or appointment of at least one, if not more, of the officers who embezzled from FTE.

51.     On information and belief, De Silva and/or his Lateral Entities have been shareholders of FTE since at least 2015.

52.     Capitalizing upon FTE's financial and legal woes, De Silva, who was not yet a director, convinced the current board of FTE to restructure FTE's debt to the Lateral Entities by, among other things, granting Benchmark's principals majority stock interests in FTE, issuing stock to Lateral, and guaranteeing Lateral and Benchmark control of the FTE board of directors.

53.     As a result of this agreement, the majority of FTE's board resigned and the only members left on the board were non-party Fred Sacramone ("Sacramone"), who was also the CEO of Benchmark and one of the major shareholders in FTE, and James Shiah, an independent director.

54.     Sacramone was then appointed as Co-CEO of FTE, in addition to being the CEO of its most valuable asset, Benchmark, a director of FTE, and one of FTE's major shareholders.

55.     In July 2019, FTE, Lateral and Benchmark entered into a series of agreements related to the Lateral loan.  The first was an investor rights agreement, which assured De Silva that he would have full control of the board of directors of FTE.  Specifically, under Paragraph 1(a) of the agreement, FTE agreed that Sacramone would remain on the board, that Lateral would appoint a director (which would be De Silva), and that the remaining five directors would be persons "reasonably acceptable to Lateral."

56.     Lateral and Benchmark also entered into a Credit Agreement which, under Paragraph 1.5(c), allowed Lateral to give priority to certain promissory notes owed to Sacramone by FTE if Lateral was able to find a "an investment or similar transaction . . . on or before October 31, 2019."  If Lateral could find an asset to replace Benchmark, not only would Lateral get to foreclose on Benchmark, but Benchmark's principals would get a priority payment on debt.

57.     Although FTE was technically in default on the Lateral Loan, Lateral and FTE entered into a series of forbearance agreements which, in effect, bought De Silva time to find an alternative investment so that he could maximize his, Sacramone's and/or the Lateral Entities' personal benefits on any foreclosure by the Lateral Entities on Benchmark.

11

C.     **DE SILVA BRINGS IN SINGAL.**

58.     Actively looking for a replacement investment so that he could foreclose upon Benchmark, De Silva met with Singal.

59.     At that time, Singal and/or his related entities were under contract to purchase the Vision Portfolio from the Szkaradeks, as well as in discussions to acquire another large real estate business (the "Texas Portfolio").

60.     With Singal's two potential acquisitions on the table, on September 6, 2019, FTE (being run by Sacramone, the CEO of Benchmark) conveniently defaulted on its loan to Lateral, setting Lateral up to foreclose on Benchmark.

61.     De Silva, the managing member of the Lateral Entities, declared default on the Lateral Loan.

62.     Sacramone's co-CEO resigned from FTE, leaving Sacramone as the sole CEO of both FTE and Benchmark, as well as a director and majority shareholder of FTE.

63.     On October 6, 2019, Singal and/or his related entities and FTE finalized a term sheet for FTE to acquire the Texas Portfolio.

64.     Under that term sheet, Lateral would be allowed to foreclose upon Benchmark if Singal brought the real estate investment into FTE.

65.     Importantly, however, Benchmark, Lateral and De Silva agreed that Benchmark would continue to provide financial assistance to FTE in the approximate amount of $7 million, payable in monthly payments, ***unless the deal for the replacement investment closed by December 30, 2019.***  If FTE closed on a transaction in which it acquired an asset worth the same or more than Benchmark by December 31, 2019, De Silva/Lateral would fully own Benchmark, and Benchmark would not have to pay any money to FTE.

66.     On October 10, 2019, the Lateral entities strictly foreclosed on Benchmark.

67.     When the Lateral entities strictly foreclosed on Benchmark, Sacramone was the CEO of FTE, Sacramone was the CEO of Benchmark, and Sacramone and non-party James Shiah were the only directors of FTE.

68.     Sacramone and Shiah resigned after the foreclosure.

**D.** **DE SILVA BUILDS HIS NEW BOARD OF DIRECTORS.**

69.     In October 2019, immediately after executing the Lateral Entities' foreclosure on Benchmark, De Silva appointed himself a director of FTE.  He also appointed Beys, Cunningham and non-party Peter Ghishan ("Ghishan") as directors.  Ghishan is a current FTE shareholder and Nevada resident.

70.     Singal introduced Cunningham to De Silva.  However, De Silva was the one who interviewed Cunningham, who vetted his qualifications, and who made the determination to appoint Cunningham as a director.

71.     Singal was not involved in the interview and approval process of either Cunningham or Ghisan.

72.     Cunningham and Ghishan were certified as independent directors by FTE's compliance counsel, Troutman Pepper.

73.     On information and belief, Beys and De Silva are longtime friends dating back to their undergraduate days in college.  Beys is a former US attorney, and currently is a partner in a small law firm in New York.

74.     Beys would eventually be appointed as interim CEO of FTE, and continues in that role today.

75.     On information and belief, at the time De Silva assembled this board, he was fully aware that FTE was in dire financial trouble and that the loss of Benchmark would significantly exacerbate this problem.   De Silva did not disclose this fact to Cunningham.

76.     FTE's shareholders have never voted on the appointment of Beys, De Silva or Cunningham.  FTE has not held a meeting of the shareholders or an election of directors since 2018.

**E.  DE SILVA AGGRESSIVELY PURSUES THE VISION PORTFOLIO**

77.     In November 2019, the deal with FTE to acquire the Texas Portfolio fell through. Thus, if De Silva wanted to avoid Benchmark's obligation to pay FTE $7 million, he needed to have FTE acquire the Vision Portfolio and close on that transaction no later than December 31,

1    2019, less than two months away.

2         78.    FTE announced that it would move forward with the Vision Portfolio.

3         79.    In that same public announcement, FTE announced that TTP8 and/or Singal had

4    assumed approximately $3-$4 million of FTE's outstanding debt owed to other parties in exchange

5    for the issuance of 20% of FTE's stock to TTP8.

6         80.    TTP8 became a shareholder of record of FTE in October or November 2019.

7         81.    De Silva, while acting as a director of FTE, had multiple conversations with TTP8

8    in which De Silva represented that FTE intended to develop and increase the profitability of the

9    Vision Portfolio.

10        82.    Relying upon De Silva's representations, TTP8 agreed to purchase FTE shares and

11   facilitate a debt cancellation for FTE, believing that FTE would be a lucrative investment based

12   upon De Silva's statements.

13        83.    Unbeknownst to TTP8, FTE was virtually bankrupt at the time that De Silva made

14   these representations, with no ability to actually purchase the Vision Portfolio, maintain it, or

15   invest in it to increase FTE's shareholder's profits.

16        84.    Unbeknownst to TTP8, De Silva made these false representations because he

17   wanted to alleviate Benchmark's $7,000,000 obligation to FTE which obligation, but for De

18   Silva's scheming, may have actually provided value to FTE shareholders.

19        85.    As will be shown below, De Silva's statements turned out to be completely false, a

20   fact of which De Silva knew or should have known at the time it induced TTP8 to purchase FTE

21   shares.

22        86.    De Silva also misrepresented the status of FTE's finances to Cunningham and

23   Ghisan, in order to induce them to come on as directors.

24        87.    Despite his knowledge of FTE's dire financial future, in December 2019, De Silva

25   attended multiple meetings in New York, Sacramento and Hawaii to negotiate a deal with the

26   Szkaradeks to purchase the Vision Portfolio.

27        88.    The Szkaradeks, the Vision Portfolio companies and FTE entered into a Purchase

28   and Sale Agreement ("PSA") under which the Vision Portfolio would be purchased from the

14

Szkaradeks by (1) a $250,000 deposit, (2) $10 million in cash and (3) approximately 20% of FTE's common stock, as well as preferred shares to provide over a 40% ownership stake.  De Silva and/or the Lateral Entities guaranteed the cash payment.

89.     The PSA set December 20, 2019 as the closing date for the transaction, eleven days before De Silva's drop-dead date of December 31, 2019 to get Benchmark free and clear of its $7,000,000 obligation to FTE.

90.     FTE conducted substantial due diligence on the Vision Portfolio.

91.     At the Szkaradeks' request, Collateral Analytics prepared an audit of the Vision Portfolio which FTE reviewed.

92.     Cunningham also requested that Turner Stone & Company, a reputable auditing firm, perform an independent audit of the Vision Portfolio.

93.     Turner Stone did perform an independent audit, and in that audit, Turner Stone noted that the Vision Portfolio was mired with litigation in multiple states.  However, Turner Stone noted:

> The Seller is engaged in ongoing litigation as part of the acquisition . . . ***Management does not believe that any ongoing litigation will have a material impact on the statements of revenue and certain expenses . . .***

94.     FTE filed the Turner Stone audit with the SEC.

95.     FTE hired the reputable law firm of Troutman Pepper to draft the PSA and assist with due diligence.

96.     Part of due diligence required the Szkaradeks to disclose all pending litigation against the Vision Portfolio.  The Szkaradeks provided Appendix 3.14 to the PSA, which did disclose all pending litigation against the Vision Portfolio.

97.     In lawsuits filed by FTE in Nevada, Pennsylvania, New York and Delaware, they allege that they were "duped" by the Szkaradeks.  Nothing could be further from the truth.  In fact, it was the Szkaradeks who were duped, as the restated financials in Note 21 of the 12/31/2019 Form 10-K shows that FTE was technically bankrupt as of 09/30/2019 with a negative net worth of ($77,596,000), a fact concealed by De Silva after he foreclosed on Benchmark in his "Loan to

15

1    Own" scheme.

2        98.    Part of the due diligence required the Szkaradeks to disclose all properties which it

3    was aware were not in compliance with local laws, codes or taxes.  The Szkaradeks provided

4    Appendix 3.15 to the PSA, which did disclose this information.

5        99.    On information and belief, Troutman Pepper reviewed these disclosures.

6        100.    Beys, who is an attorney and self-proclaimed expert real estate investor, and

7    Cunningham, who has significant experience in the accounting, auditing and real estate industry,

8    also reviewed the Szkaradeks' disclosures of litigation and legal issues.

9        101.    Lateral Investment Management, managed by De Silva, also prepared an

10    investment memorandum that urged FTE to move forward with the Vision Portfolio.

11        102.    Dated December 6, 2019, this memorandum (the "Lateral Memorandum")

12    specifically noted that there were "legal risk factors" associated with the Vision Portfolio, but that

13    these legal risks "have been mitigated in recent days by settlements."

14        103.    The Lateral Memorandum identified lawsuits by the attorney generals of New

15    York, Pennsylvania, Maryland and Wisconsin, and advised FTE to structure the deal as a

16    "purchase of assets rather than a stock acquisition" to avoid the liabilities associated with the

17    pending litigation.

18        104.    The Lateral Memorandum states that "Management believes the future legal risk is

19    mitigated by two factors.  First, [Vision] has changed its business practices . . . Secondly, [Vision]

20    has received a letter from its legal counsel Hudson Cook stating that their current practices are

21    within regulation in the remaining states where they hold assets."

22        105.    Page 9 of the Lateral Memorandum states that the Vision Portfolio was

23    "distressed," with 133 homes "subperforming," 399 homes "nonperforming" and 806 homes

24    vacant.  There were 3,186 homes total, meaning that 58% of the assets were underperforming.

25        106.    Page 12 of the Lateral Memorandum includes further comments on the legal risk in

26    moving forward with the Vision Portfolio.

27        107.    On page 13 of the Lateral Memorandum, Lateral states that the Vision Portfolio

28    was introduced to FTE by Singal.   However, it was Lateral (i.e., De Silva) who negotiated the

16

Vision Portfolio with the Szkaradeks, not Singal, in: (a) a two-day meeting in San Mateo, California on December 3 and 4, 2019; and (2) a subsequent "on site" visit by Lateral to Vision's headquarters in South Carolina, where Lateral (i.e. De Silva) "review[ed] the financials and accounting system to verify the reported numbers."

108.   Despite its legal woes and distressed nature, Lateral firmly recommended moving forward with the Vision Portfolio as it believed it to be valued at $350,000,000.00.

109.   The Lateral Memorandum was a primary factor in why FTE's board voted in favor of moving forward with the Vision Portfolio.

110.   FTE ultimately reported that the Vision Portfolio was valued at $229,828,000.00 to the SEC.

111.   In 2021, the Collateral Analytics audit was updated, and showed that the Vision Portfolio had appreciated in value.

**F.     DECEMBER 2019:  THE VISION PORTFOLIO CLOSES**

112.   In December 2019, multiple events occurred that might have prevented the Vision Portfolio from closing had De Silva not been so determined to get Benchmark out of FTE.

113.   First, on December 16, 2019, the New York Stock Exchange ("NYSE") informed FTE that it would delist FTE's stock because, since January 2019, and for reasons unrelated to the Vision Portfolio, FTE had not been in compliance with NYSE's rules by failing to file a timely 10-K, and failing to have a consistent audit and compliance committees on its board of directors.

114.   NYSE had made multiple, prior threats to FTE throughout 2019 to de-list its stock.

115.   When NYSE learned that FTE had issued a shareholder 20% of FTE's stock in violation of the NYSE's rules, the NYSE delisted FTE's stock.

116.   FTE revised its agreement with that shareholder in December 2019, to reduce TTP8's stock to 19.9%.  However, NYSE delisted FTE's stock as of December 17, 2019.

117.   Second, on December 16, 2019, the SEC publicly announced its investigation of Singal for an unrelated transaction not involving FTE or any of the parties to this litigation.

118.   On information and belief, De Silva was previously aware of the SEC's investigation of Singal.

119.    Beys immediately attempted to distance himself from Singal.  Under the PSA, the Szkaradeks were prohibited from transferring FTE stock to Singal or any of his affiliate entities (as defined under Rule 12b-5) or family members with two exceptions:  (1) the Szkaradeks could transfer a portion to a trust over which they were trustee (a "Vision Trust") or (2) the Szkaradeks could transfer approximately half of their stock to the First Capital Real Estate Trust, Inc. (the "FC-REIT").

120.    In December 2019, Singal was the CEO of the FC-REIT.  Singal resigned as CEO of the FC-REIT that month.

121.    In December 2019, Singal and/or entities he managed were the majority shareholders of the FC-REIT.   On information and belief, Singal and/or entities he managed are still the current majority shareholders of the FC-REIT.

122.    Fully aware of both NYSE's delisting of FTE's stock (for an unrelated reason) and Singal's SEC issues (for an unrelated transaction), De Silva continued to push FTE's purchase of the Vision Portfolio.

123.    But, despite De Silva's best efforts, the Vision Portfolio did not close on December 20, 2019 as planned because FTE did not have the $10,000,000 in cash to close the deal.

124.    De Silva flew to Hawaii, where the Szkaradeks were spending their Christmas holiday, and De Silva personally promised the Szkaradeks that he (and/or the Lateral Entities) would financially back the $10,000,000 cash to allow FTE to close on the Vision Portfolio.

125.    As a result of De Silva's promise, the Szkaradeks and FTE entered into the First Amendment to the PSA under which the Szkaradeks accepted promissory notes from FTE for the $10,000,000.

126.    The new closing date was set for December 30, 2019, one day before De Silva's drop-dead date of December 31, 2019 to get Benchmark free and clear of its $7,000,000 obligation to FTE.

127.    The Vision Portfolio transaction did, in fact, close on December 30, 2019.

128.    As a result, De Silva and the Lateral Entities eliminated Benchmark's $7,000,000 obligation to FTE.

27154001.1/057702.0001

III.    **THE VISION PORTFOLIO**

129.    Beys and De Silva have recently claimed in multiple legal filings that FTE was unaware of the legal woes and financial issues associated with the Vision Portfolio when FTE purchased the portfolio in December 2019.  These statements are false.

    A.    **FTE KNEW ABOUT THE VISION PORTFOLIO'S PRE-EXISTING LEGAL WOES.**

130.    The Vision Portfolio initially consisted of lease-to-own homes located throughout the country.  Because this was a relatively new concept, the Vision Portfolio came under legislative and legal scrutiny beginning in 2016, three years before FTE ultimately acquired this portfolio of assets.

131.    Specifically, in November 2016, the Wisconsin Attorney General filed a lawsuit against Vision Property Management, LLC ("Vision"), the umbrella entity for the Vision Portfolio.

132.    In March 2017, the Maryland Attorney General filed a similar lawsuit against Vision.  After this lawsuit, the Vision Portfolio became national news and was reported on by the New York Times.[1]

133.    On August 1, 2018, the New York Attorney General filed a similar lawsuit against Vision.

134.    On August 31, 2018, a private class action was filed in New Jersey against Vision.

135.    One year later, the Vision Portfolio's legal woes continued to be national news in August 2019.[2]

136.    On October 10, 2019, the Pennsylvania Attorney General filed a lawsuit against Vision (the "Allegheny County lawsuit").

137.    These legal issues were fully disclosed to FTE during the negotiation and execution of the PSA and its amendments.

---

[1] *See* Vision, Operator of Rent-to-Own Homes, Gets Legislative Scrutiny - The New York Times (nytimes.com) (last visited April 21, 2022).

[2] *See* New York sues rent-to-own operator Vision Property Management for predatory lending - HousingWire (last visited April 21, 2022).

19

138.    As alleged above, the Szkaradeks disclosed all known pending litigation (including all of the above) and all known compliance issues to FTE in their appendices.

139.    Beys reviewed these appendices.

140.    On information and belief, Troutman Pepper reviewed these appendices.

141.    Turner Stone noted that litigation against the Vision Portfolio was pending in multiple jurisdictions but that management (which at that time was Beys) did not believe that this would adversely affect the value of the Vision Portfolio.

142.    The Lateral Memorandum repeatedly discussed the attorney general and private class action litigation pending against the Vision Portfolio, and advised that any risks associated with it were mitigated.

143.    The Lateral Memorandum noted that there may be unknown future legal risks based on the Vision Portfolio's past actions, but that these risks were mitigated by a change from a rent-to-own model to a pure rental model.  According to the Lateral Memorandum, this change was reviewed by the law firm Hudson Cook and Hudson Cook certified that this mitigation measure brought the Vision Portfolio into compliance with existing laws and regulations.

**B.    BEYS AND DE SILVA WERE WELL AWARE OF THE VISION PORTFOLIO'S FINANCIAL AND LEGAL ISSUES IN 2020, BUT NEVER SOUGHT TO RESCIND THE TRANSACTION.**

144.    On January 10, 2020, the New York Times once again picked up the Vision Portfolio's legal woes.[3]  Four days later, local New York media ran an article on the Vision Portfolio's legal woes.[4]

145.    On or about January 5, 2020, the Pennsylvania Attorney General obtained a temporary restraining order against the Szkaradeks, requiring them to place each of their approximately $4.8 million promissory notes from FTE into an escrow account.

146.    These promissory notes were the approximately $10,000,000 in "cash" that FTE

---

[3] *See* New York Reaches Settlement With Rent-to-Own Home Seller - The New York Times (nytimes.com).

[4] Property management company to potentially pay millions to New York home buyers (news10.com)

owed to the Szkaradeks for the closing on the Vision Portfolio.

147.    On January 14, 2020, the Szkaradeks and the Pennsylvania Attorney General entered into an escrow agreement in which the Szkaradeks agreed to place the promissory notes into escrow.

148.    Nothing in the injunction order prohibits the Szkaradeks from voting their shares of stock.

149.    Nothing in the escrow agreement places the Szkaradeks' stock into escrow.

150.    In February 2020, Beys filed a verification on behalf of FTE in the Pennsylvania Attorney General Litigation, in which he confirmed that no proceeds had been paid to the Szkaradeks under the promissory notes and that he did not know when, or if, FTE could ever pay these notes.

151.    On July 1, 2020, Inmost, the senior secured creditor for the Vision Portfolio, declared default on certain loans.

152.    At risk of defaulting on its obligations with a second lender, DLP Lending ("DLP"), FTE spent weeks negotiating a refinancing of the Vision Portfolio's loans with DLP.

153.    As a result of these negotiations, DLP obtained personal guarantees from the Szkaradeks and Beys on FTE's and FTE's wholly-owned subsidiary, USHR's obligations to DLP.

154.    On November 5, 2020, FTE filed a 10-K for 2019, and ***specifically itemized*** the pending Vision litigation.

155.    On December 22, 2020, FTE filed an 8-K containing a shareholder update.

156.    In that update, FTE stated its decision to separate from another subsidiary and solely pursue the Vision Portfolio.  This update, authored by Beys, states that the decision to solely focus on the Vision Portfolio was reached "after careful consideration and deliberation."  This update, authored by Beys, comes almost one year after the closing on the transaction, one year after receiving notice of the litigation from both the Szkaradeks and Turner Stone, the independent auditor, eight months after Beys appeared in the Pennsylvania Attorney General litigation, five months after lenders began declaring defaults, and over one month after FTE publicly admitted it was aware of the Vision Portfolio litigation.

**C.    DESPITE BEING WELL AWARE OF THE VISION PORTFOLIO'S ISSUES, BEYS AND DE SILVA <u>RATIFIED</u> THE PURCHASE, RATHER THAN RESCINDING IT IN 2021.**

157.    On April 2, 2021, FTE entered into the Second Amendment to the PSA with the Szkaradeks, at a time when FTE indisputably knew that the lenders were declaring default and that the Vision Portfolio was engaged in litigation.

158.    The Szkaradeks became shareholders of record of FTE, and majority shareholders, following entry of the Second Amendment to the PSA, as of April 2021.

159.    Under the Second Amendment to the PSA, the Szkaradeks again agreed to transfer half of their stock to the FC-REIT.

160.    However, as of April 2021, the FC-REIT was not in good standing with Maryland, its state of incorporation, and was on the brink of having its corporate charter forfeited.

161.    On information and belief, Singal and/or entities he managed were still majority shareholders of the FC-REIT as of April 2021.  However, because Singal had resigned from all management and officer positions related to the FC-REIT, he was not informed as to its corporate status.

162.    In October 2021, the State of Maryland forfeited the FC-REIT's corporate charter, rendering it a legal non-entity.

**D.    SINGAL INCURS BEYS' AND DE SILVA'S WRATH.**

163.    In December 2021, DLP filed the Pennsylvania litigation (the "DLP Lawsuit") against FTE, Beys, the Szkaradeks and USHR, seeking to enforce their personal guarantees that they had entered into in August 2021, as discussed above

164.    On information and belief, Singal had previously suggested to De Silva and Beys that the one solution to maximize the values of FTE's shares for its shareholders would be for FTE to file bankruptcy.

165.    On information and belief, Singal also recommended that Benchmark be brought back into FTE.

166.    On information and belief, Singal's statements were so threatening to De Silva that De Silva and Beys began engaging in a concerted effort to disenfranchise Singal and any

22

1    shareholders aligned with him in order to protect the Benchmark transaction.

2    167.    On information and belief, De Silva is not only concerned that his Lateral Entities

3    may lose the Benchmark transaction, but that De Silva's fraudulent self-dealings will be brought

4    to light, including, but not limited to, FTE's payment of legal expenses incurred by the Lateral

5    Entities, and Beys' and De Silva's false subsequent claim that the exercise price of Lateral's stock

6    warrants was reduced to a penny, when in fact, the contracts make it clear that Lateral's exercise

7    price was to remain at $3.00.

8
     ## IV.    BEYS' AND DE SILVA'S WAR OF ATTRITION AGAINST FTE'S
9    SHAREHOLDERS

10   168.    Beys and De Silva have filed multiple lawsuits against FTE's shareholders, in order

11   to detract from FTE shareholders' valid claims in Nevada.  The litigation this Court will need to

12   be aware of is as follows:

13   a.    The "Pennsylvania Lawsuit," which was FTE's frivolously filed counterclaims and

14   joinder claims against the Szkaradeks and Singal which FTE spontaneously injected into a third-

15   party lender lawsuit in order to race shareholders to the courthouse and stay a Nevada lawsuit Beys

16   and De Silva knew as imminent.  FTE's frivolous claims have been dismissed.

17   b.    The "Nevada lawsuit," which is a state court lawsuit filed by Innovativ and the

18   Szkaradeks seeking to compel a shareholder meeting, disclosure of the stock ledger and to confirm

19   the bylaws amendment.  The Szkaradeks claims have been dismissed, but Innovativ won on its

20   request to inspect the stock ledger.

21   c.    The "New York Lawsuit" is a RICO lawsuit FTE filed against Innovativ,

22   Cunningham, TTP8 and certain other shareholders who apparently pose a perceived threat to Beys

23   and De Silva.

24   d.    The "Delaware Lawsuit" is the lawsuit FTE filed in Delaware against the

25   Szkaradeks, alleging that the Szkaradeks defrauded FTE (but, as set forth above, this is not true).

26   e.    The "New York Arbitration," which is an arbitration brought by a third party in

27   New York against the FC-REIT and its shareholders, TTP8, and others, alleging that these entities

28   purportedly owe the third party a finder's fee for the Vision Portfolio.

23

**A.    THE SHAREHOLDERS THWART DE SILVA'S MCA SCHEME AND DESIRE FOR CONTROL OVER THE VISION PORTFOLIO.**

169.    Innovativ purchased 500,000 shares of FTE stock on May 19, 2020.

170.    FTE has not held a shareholder meeting since December 2018.  The last shareholder meeting was held on December 26, 2018.

171.    FTE last disseminated a shareholder update on June 29, 2020.

172.    After that update, FTE did not issue any other updates or call any meetings of the shareholders.

173.    Under Nevada law, and FTE's bylaws, shareholder meetings must be held annually.

174.    Aware that there was pending litigation and financial issues, Innovativ requested to see FTE's books and records on December 21, 2021.

175.    FTE did not respond to Innovativ's request.

176.    By early 2022, FTE remained delinquent in its SEC filings, had not held a shareholder meeting in over two years, and had not been relisted on the NYSE.  FTE's attempts to create any sort of shareholder value appear to have been largely abandoned by this time.

177.    Innovativ then attempted to contact FTE's directors.  Ultimately, Innovativ was able to speak with Cunningham.

178.    Innovativ learned that De Silva had proposed having his Lateral Entities lend FTE $2,000,000, with the Lateral Entities being assigned valuable MCA claims and issued additional stock with superior voting rights.  This would, in effect, allow De Silva to control the Vision Portfolio in exactly the same manner he did Benchmark.

179.    In 2021, Collateral Analytics updated its audit of the Vision Portfolio and listed an appreciation in value.  Thus, despite Beys' current statements to the contrary, the Vision Portfolio remains a lucrative asset.  On information and belief, this is why De Silva wants to acquire control over the Vision Portfolio.

180.    Cunningham voted against De Silva's proposal.

181.    On information and belief, De Silva's plan for the Vision Portfolio was thwarted when shareholders representing a majority interest of the shares amended the bylaws to prevent a

24

1  poison pill from occurring.

2      182.    FTE refuses to recognize the amendment as valid and binding on its Board.

3      183.    On February 8, 2022, Innovativ sent a letter to the Board demanding that it call a

4  meeting of the stockholders to hold an election within seven days.

5      184.    In that letter, Innovativ informed FTE that if it did not call a meeting within seven

6  days, Innovativ would file an action before the Eighth Judicial District Court in Clark County to

7  compel such a meeting.

8      **B.    BEYS AND DE SILVA RACE PLAINTIFFS TO THE COURTHOUSE IN A
           FRIVOLOUS PENNSYLVANIA LAWSUIT.**

9

10     185.    On February 15, 2022, the date by which Innovativ informed FTE it would file an

   action before the Nevada state court, FTE filed counterclaims against the Szkaradeks in the DLP
11
   Pennsylvania litigation, and a joinder complaint against Singal.
12
       186.    For the first time, and in direct contradiction to its statements to the SEC, FTE
13
   argued that the Szkaradeks and Singal had defrauded FTE by failing to inform it about the nature
14
   of the litigation against the Vision Portfolio.
15
       187.    Notably, FTE did not raise these issues when it was given a schedule of the
16
   litigation, when its independent auditor reviewed this litigation, when De Silva encouraged closing
17
   on the Vision Portfolio, when Lateral Investment completed the investment memorandum, when
18
   Beys appeared in the Pennsylvania AG litigation, or when FTE was negotiating the Second
19
   Amendment.
20
       188.    One of the primary avenues of relief that FTE sought in the DLP lawsuit was to
21
   prevent the Szkaradeks from transferring shares to Innovativ.  FTE was not, at that time, aware
22
   that the Szkaradeks were among the shareholders who would seek to compel a meeting.  Thus,
23
   FTE argued to the Pennsylvania court that the Szkaradeks must be enjoined from transferring
24
   shares to Innovativ because, without these shares, Innovativ would not have standing to seek a
25
   meeting of the shareholders.
26
       189.    FTE did not sue or name Innovativ in the DLP Lawsuit.
27
       190.    Beys verified the allegations in the DLP Lawsuit.
28

25

191.    Singal filed a demurrer to the DLP Lawsuit, for lack of personal jurisdiction.  FTE ultimately agreed to dismiss Singal from the frivolous DLP Lawsuit.

192.    The Szkaradeks filed a demurrer to the DLP Lawsuit for lack of jurisdiction, because the PSA contains a venue and jurisdiction clause that requires any disputes as to the PSA's terms be filed in Delaware, not Pennsylvania.  The Pennsylvania court dismissed FTE's frivolous claims against the Szkaradeks for lack of jurisdiction.

**C.     BEYS AND DE SILVA FREEZE OUT CUNNINGHAM**

193.    In February 2022, Beys and De Silva sent Cunningham a letter accusing him of breaching his fiduciary duties to FTE by allegedly revealing confidential information to shareholders.

194.    On information and belief, Cunningham has not breached any obligation of confidentiality.

195.    In March 2022, Beys and De Silva informed Cunningham that they would not hold any further meetings of the directors.

196.    Under FTE's bylaws, when the board acts without a meeting, ***all*** directors must consent.

197.    When Beys and De Silva were freezing out Cunningham, Beys settled litigation with the Michigan Attorney General and the Vision Portfolio for an amount that will lose FTE approximately $17 million.

198.    Cunningham did not consent to the settlement of the Michigan litigation, and he has since requested that FTE provided him with further information on the believed breaches of fiduciary duties being committed by the rogue directors De Silva and Beys.

199.    On information and belief, Beys is proposing to use the Michigan settlement as a model for all other litigation.  On information and belief, this model is financially unsustainable and will crush the value of FTE's shares, harming its shareholders, by generating a significant loss of up to 20% of FTE's net worth as well as incurring approximately $2,000,000 in cash obligations and reserves that FTE is unable to pay.

///

27154001.1/057702.0001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.     BEYS SOUGHT A STAY OF THE SHAREHOLDER LITIGATION, BUT FILED SUBSEQUENT LITIGATION AGAINST THEM IN NEW YORK.**

200.    After realizing that the claims in the DLP litigation would likely be dismissed for lack of jurisdiction, Innovativ and the Szkaradeks filed an action against FTE in Eighth Judicial District Court, in and for the County of Clark, in March 2022 (the "Nevada lawsuit").

201.    FTE immediately moved to stay the Nevada lawsuit under the first-to-file rule, arguing that its defenses to Innovativ's and the Szkaradeks' claims were virtually the same as its claims against the Szkaradeks and Singal in Pennsylvania.  The Nevada court granted a temporary stay, pending resolution of the demurrers in Pennsylvania.

202.    To the contrary, what FTE was trying to achieve in Pennsylvania was De Silva's loan-to-own scheme:  The Szkaradeks would lose their stock, and any shareholder aligned with them (Singal and Innovativ) would also lose their stock, but FTE would maintain the Vision Portfolio assets, leaving De Silva in full control of the Vision Portfolio.

203.    On information and belief, FTE convinced the FC-REIT to intervene in the DLP litigation. However, as of the date of its intervention, the FC-REIT's corporate charter had been revoked and it was a legal non-entity.

204.    Under Maryland law, any person who attempts to transact business on behalf of a revoked entity is guilty of a misdemeanor.

205.    Despite this, someone purporting to act on behalf of the FC-REIT did intervene in the Pennsylvania litigation.   The shareholders of the FC-REIT, however, do not know how this "representative" came to be appointed and/or has authority to act on behalf of the FC-REIT.

206.    Further complicating the FC-REIT issue is the fact that an alleged broker has initiated a lawsuit against Singal and all members of the FC-REIT related to allegations in the Pennsylvania litigation.   Because that docket is not public information, however, on information and belief, this information could only have been obtained from Beys.   This is supported by the fact that this alleged "third party action" is seeking an order to keep the present FTE management in place.   There is no benefit to the third party from having this occur.   This means that Beys is arguing to multiple courts that the shareholders of the FC-REIT should be protected, while

27

1    simultaneously encouraging third parties to sue those same shareholders.

2        207.    FTE also threatened to have the FC-REIT intervene in the Nevada litigation, despite

3    being aware that the FC-REIT no longer legally exists.  FTE continues to argue in multiple forums

4    the Szkaradeks must transfer their shares in FTE to the FC-REIT, an entity that no longer exists.

5        208.    The FC-REIT continues to take criminal action at FTE's urging, and has now

6    purported to intervene in the Delaware action, which will be discussed below, despite the fact that

7    the FC-REIT's corporate charter remains forfeited by the State of Maryland.

8        209.    While the stay of the Nevada Action was pending, FTE filed a RICO lawsuit in

9    New York against Singal, TTP8, Thomas Coleman, Innovativ's principal, Innovativ, Cunningham,

10   Ghisan, and certain other shareholders who signed the bylaws amendment.

11       210.    The RICO lawsuit alleges virtually identical allegations to the Pennsylvania Action.

12       211.    FTE then argued to the court in the Nevada Action that the shareholders' claims

13   should remain stayed, but that FTE  should be allowed to proceed with its subsequently filed New

14   York action against the shareholders.

15       212.    Beys verified the allegations in the New York RICO lawsuit.

16       213.    This lawsuit is just one of many RICO lawsuits that Beys, De Silva and FTE have

17   filed in the past few months.  *See Lateral Juscom Feeder, LLC, et. al. v. Tzvi Reich, et. al,* No.

18   655241/2021 (N.Y. County, N.Y.) (filed August 30, 2021); *Lateral Recovery, LLC, et. al. v.*

19   *Capital Merchant Servs., LLC, et. al.,* No. 1-21-cv-08784-LJL (S.D.N.Y. filed October 20, 2021);

20   *Lateral Recovery, LLC, et. al. v. Queen Funding, LLC,* No. 1-21-cv-09607-LGS (S.D.N.Y., filed

21   November 19, 2021); *Lateral Recovery, LLC, et. al. v. BMF Advance, et. al.,* No. 1-22-cv-02170-

22   ALC (S.D.N.Y., filed March 16, 2022); *Lateral Recovery, LLC, et. al. v. Cap Call et. al.,* No. 1-

23   22-cv-02314-LGS (S.D.N.Y., filed March 22, 2022); *Lateral Recovery, LLC, et. al. v. Adar Bays,*

24   *LLC, et. al.,* No. 1-22-cv-03396-CM (S.D.N.Y., filed April 26, 2022).

25       214.    Beys verified the allegations in all of these lawsuits.

26       215.    On information and belief, De Silva directly benefits from these RICO lawsuits

27   because certain of the Lateral Entities and/or other entities owned and/or controlled by De Silva

28   have either been transferred a portion of FTE's interests in these claims and/or are being funded

28

1    by the litigation finance company that De Silva controls.

2           216.    Meanwhile, on information and belief, while pursuing questionable RICO

3    litigation, under Beys' management, FTE is otherwise failing to defend lawsuits filed against it

4    and/or failing to prosecute claims it has against third parties, all to the detriment of its shareholders.

5           217.    Many of these other lawsuits arise from Beys' and De Silva's corporate

6    mismanagement of FTE, resulting in FTE failing to pay obligations owed to lenders on the Vision

7    Portfolio.

8           218.    On information and belief, Beys has also encouraged public authorities to bring

9    actions against FTE, the Vision Portfolio and/or FTE's shareholders, in a direct breach of his duty

10   of loyalty.

11
     **V.    BEYS' AND DE SILVA'S WAR OF ATTRITION REVEALS THEIR**
12   **MISMANAGEMENT OF FTE'S ASSETS.**

13          219.    In the Pennsylvania Action, DLP moved for appointment of a receiver over USHR.

14          220.    DLP argued that FTE had committed waste and allowed FTE's assets to deteriorate

15   by:

16          a.   Failing to pay taxes on multiple properties despite multiple delinquent notices;

17          b.   Losing multiple properties due to tax lien foreclosures;

18          c.    Losing multiple properties due to failure to pay condominium association fees;

19          d.   Failure to respond or defend against foreclosure proceedings in multiple states;

20          e.   Failure to service USHR's accounts, and instead falsely direct tenants to third-party

21               servicers who were not servicers for that account; and

22          f.   Allowing USHR's subsidiaries to file materially false tax returns;

23          221.    The delinquent tax notices were specifically addressed to Beys.

24          222.    The Pennsylvania Court agreed with DLP and appointed a receiver over USHR on

25   May 17, 2022.

26          223.    On May 17, 2022, in a separate Pennsylvania action in Allegheny County (the one

27   initiated by the Pennsylvania Attorney General against Vision, which is not the DLP lawsuit), the

28   Pennsylvania Court of Appeals also issued an opinion further illuminating Beys' and De Silva's

mismanagement of FTE, and lists:

     a.   In October 2020, FTE lost fourteen (14) homes due to tax lien foreclosure sales, despite multiple advance notices;

     b.   FTE did not object to the foreclosures;

     c.   FTE's repeated failure to pay property taxes on other homes;

     d.   FTE's repeated failure to pay homeowner's association fees;

     e.   FTE's repeated failure to pay utility bills;

     f.   and FTE's unresponsiveness in responding to its tenants' concerns, inquiries and complaints.

224.   The loss in value of these homes to FTE well exceeds $75,000.

225.   On May 23, 2022, FTE and Beys filed an 8-K shareholder update and issued a letter to the shareholders.  In the letter, Beys discusses all of the litigation ***FTE*** has filed against its own shareholders.

226.   Beys did not mention the Nevada Action, which was seeking to compel a shareholder meeting and enforce shareholder rights.

227.   Beys does not mention that a receiver had been appointed over USHR, FTE's subsidiary.

228.   Beys does not mention the Pennsylvania Court of Appeals' finding.

229.   But for having invoked Beys' and De Silva's personal wrath and being repeatedly sued by them, Innovativ would not have learned about the receivership either.

230.   On information and belief, Beys has personally reached out to various state attorney generals and requested that they initiate litigation against FTE related to the Vision Portfolio.

231.   On information and belief, Beys and/or De Silva encouraged and/or induced a third party to file an arbitration action against FTE, the Szkaradeks, USHR, Singal, the FC-REIT and various other parties on the premise that a finder's fee for the Vision Portfolio is owed to that third party.

232.   On information and belief, Beys' and De Silva's actions and/or inaction are driven by their desire to protect De Silva's and the Lateral Entities' interests over the interests of FTE's

1    shareholders.

2    233.    On information and belief, Bey's and De Silva's actions are driven by their desire

3    to embrace De Silva's predatory lending tactics to the detriment of FTE's shareholders.

4    234.    On information and belief, Bey's and De Silva's actions are driven by their desire

5    to maintain control of FTE's board of directors and management in order to protect their own

6    personal interests to the detriment of FTE's shareholders.

7    235.    Under Beys' and De Silva's management, FTE has not undertaken any serious

8    efforts to have its stock relisted on the NYSE.  Beys and De Silva have not completed and/or

9    pursued audited financials which would permit FTE to file 10-Ks with the SEC.

10    236.    Under Beys' and De Silva's management, FTE has not adequately staffed its

11    operations to allow FTE to support the Vision Portfolio.

12    237.    Under Beys' and De Silva's management, FTE has not pursued its ability to

13    rehabilitate any of the homes in the Vision Portfolio in order to enhance value.

14    238.    On information and belief Beys' and De Silva's solution to this was to propose that

15    an employee of Lateral be appointed to assist with financial decisions, Anthony Cassano.

16    However, Mr. Cassano was formerly the CFO of FTE when the prior financial fraud with its board

17    occurred in 2018 and 2019 and appears to have a serious conflict of interest.

18    239.    Beys has continued to use FTE's former in house counsel in litigation, despite

19    concern by shareholders that this former counsel knew of the financial fraud committed by FTE's

20    board in 2018 and 2019.

21    240.    Beys focuses more on litigation than on operations, but only on litigation which he

22    has filed.  FTE has failed to defend, either at all or adequately, multiple lawsuits which pose a

23    risk to FTE's and its subsidiaries' assets.

24    241.    On information and belief, Beys and De Silva have failed to pursue other

25    meritorious legal claims FTE may have in favor of pursuing Beys' siren-song RICO litigation,

26    which appears unlikely to prevail.

27    242.    On information and belief, Beys and De Silva refuse to consider at Chapter 11

28    bankruptcy to obtain debtor-in-possession financing, because Beys and De Silva want to prevent

a claw back of the Benchmark transaction. After rejecting advice from independent bankruptcy counsel, Beys and De Silva relied upon advice from the Lateral Entities' bankruptcy counsel, which is a clear conflict of interest.

243. On information and belief, Beys is unwilling to negotiate directly with FTE's largest lenders.

244. On information and belief, Beys and De Silva have not created a business plan for FTE, nor have they budgeted for sufficient working capital to meet FTE's needs.

245. On information and belief, Beys and De Silva have failed to implement management sufficient to manage FTE's operations and oversee (a) collections, (b) payoffs, (c) sales, (d) tax delinquencies, (e) rehabilitations and/or repairs of properties, (f) appraisals, and (g) investor reporting.

246. Beys and De Silva have not complied with basic corporate governance principals, by refusing to respond to shareholder's inquiries, by refusing to hold shareholder meetings, by prohibiting FTE's sole independent director from communicating with shareholders, by failing to issue adequate shareholder updates, and by litigating against shareholders who inquire into the status of FTE.

247. Beys and De Silva admit that the reason they do not want a meeting of the shareholders called is because they believe the shareholders will vote for a change of management.  Therefore, Beys and De Silva admit they are motivated by their own personal interests over the interests of FTE's shareholders.

248. Innovativ was a shareholder of record when De Silva and Beys began committing corporate waste and mismanagement and placing their personal interests over the interests of shareholders.

249. A demand would be futile, given Beys and De Silva's refusal to call a shareholder meeting, attempts to obtain Plaintiffs' and other shareholder's stock so they cannot seek a shareholder meeting, letter to the shareholders filed with the SEC on May 23, 2022, in which Beys admits he wants to obtain Plaintiffs' stock because he does not want Plaintiff questioning his or De Silva's activities further, and Beys' and De Silva's blatant misrepresentations and/or

material omissions both under oath to the courts and in filings to the SEC.

**FIRST CLAIM FOR RELIEF**
**( Direct Breach of Duty of Loyalty)**

250.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

251.    Plaintiffs are shareholders of record of FTE.

252.    As current directors of FTE, Beys and De Silva owe Plaintiffs a fiduciary duty.

253.    As an officer of FTE, Beys owes Plaintiffs a fiduciary duty.

254.    Beys and De Silva have directly breached their duty of loyalty to Plaintiffs by, among other things, initiating frivolous litigation against Plaintiffs and others in an attempt to disenfranchise and/or prevent the use of Plaintiffs' shareholder franchise, and by soliciting hostile acts against FTE's shareholders by encouraging public authorities and private entities to initiate litigation against FTE's shareholders.

255.    Beys and De Silva admit that their impediment of Plaintiffs' shareholder franchise is directly related to Beys' and De Silva's personal interests, and in contravention of Plaintiffs' rights and best interests as shareholders, in that they do not want Plaintiffs to exercise their rights to vote their stock because Beys and De Silva do not want FTE's shareholders to elect new management.

256.    Beys' and De Silva's breach of the duty of loyalty involves actions of intentional misconduct, including, but not limited to, false representations, material omissions and/or material misrepresentations in court filings, and false, inaccurate, misleading, and incomplete public filings, such that Beys and De Silva are personally liable to Plaintiffs pursuant to NRS 78.138(7).

257.    A demand would be futile, given Beys and De Silva's refusal to call a shareholder meeting, attempts to obtain Plaintiffs' and other shareholder's stock so they cannot seek a shareholder meeting, letter to the shareholders filed with the SEC on May 23, 2022, in which Beys admits he wants to obtain Plaintiffs' stock because he does not want Plaintiff questioning his or De Silva's activities further, and Beys' and De Silva's blatant misrepresentations and/or material omissions both under oath to the courts and in filings to the SEC.

258.    Plaintiffs have been directly damaged in excess of $75,000 as a result of Beys' and

33

De Silva's breach of the duty of loyalty.

259.    At all times, Beys' and De Silva's conduct was done oppressively, willfully, wantonly, maliciously and/or fraudulently, such that an award of punitive damages is appropriate.

260.    Plaintiffs  have been forced to retain counsel to enforce their rights and are entitled to an award of its reasonable attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### (Derivative Breach of the Duty of Loyalty)

261.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

262.    As current directors of FTE, Beys and De Silva owe FTE and its shareholders a fiduciary duty.

263.    As an officer of FTE, Beys owes FTE and its shareholders a fiduciary duty.

264.    Due to the pending litigation verified by Beys, and shareholder updates issued by Beys, and the expulsion of Cunningham from meetings of the directors, a demand upon the board of directors to bring this claim on behalf of FTE is and would be futile.

265.    Beys and De Silva have derivatively breached their duty of loyalty to FTE and its shareholders by, among other things:

g.   Consummating the Benchmark transaction to the detriment of FTE's shareholders, but to De Silva's direct benefit;

h.   Beys and De Silva filing false, frivolous and malicious litigation against FTE's shareholders in a transparent effort to protect De Silva's Benchmark transaction;

i.   Beys and De Silva failing to take appropriate financial steps needed to protect FTE's financial status, including, but not limited to, bankruptcy filings, in order to protect De Silva's Benchmark transaction;

j.   Beys and De Silva refusing to recognize a shareholder amendment which would prohibit De Silva from executing another loan-to-own scheme on the Vision Portfolio, to De Silva's personal benefit and the direct detriment of FTE and its shareholders;

k.   Freezing out  FTE's sole independent director.

34

266.    TTP8 was a shareholder as of the date that De Silva successfully and fraudulently freed Benchmark of its $7,000,000 obligation to FTE.

267.    Plaintiffs were shareholders of record for all subsequent wrongful and fraudulent conduct of Beys and De Silva.

268.    Beys' and De Silva's breach of the duty of loyalty involves actions of intentional misconduct, including, but not limited to, false representations, material omissions and/or material misrepresentations in court filings, and false, inaccurate, misleading, and incomplete public filings such that Beys and De Silva are personally liable pursuant to NRS 78.138(7).

269.    A demand would be futile, given Beys and De Silva's refusal to call a shareholder meeting, attempts to obtain Plaintiffs' and other shareholder's stock so they cannot seek a shareholder meeting, letter to the shareholders filed with the SEC on May 23, 2022, in which Beys admits he wants to obtain Plaintiffs' stock because he does not want Plaintiff questioning his or De Silva's activities further, and Beys' and De Silva's blatant misrepresentations and/or material omissions both under oath to the courts and in filings to the SEC.

270.    FTE's shareholders been directly damaged in excess of $75,000 as a result of Beys' and De Silva's breach of the duty of loyalty.

271.    At all times, Beys and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

272.    Plaintiffs have been forced to retain counsel to enforce the shareholders' rights, and are entitled to an award of their reasonable attorney fees and costs.

**THIRD CLAIM FOR RELIEF**
**(Derivative Breach of Fiduciary Duty of Competency)**

273.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

274.    As current directors of FTE, Beys and De Silva owe FTE and its shareholders a fiduciary duty.

275.    As an officer of FTE, Beys owes FTE and its shareholders a fiduciary duty.

276.    Due to the pending litigation verified by Beys, and shareholder updates issued by Beys, and the expulsion of Cunningham from meetings of the directors, a demand upon the board

27154001.1/057702.0001

1   of directors to bring this claim on behalf of FTE is and would be futile.

2       277.    Beys and De Silva have breached their fiduciary duty of competency to FTE and

3   its shareholders by, among other things:

4       a.   Failing to pay taxes on multiple properties despite multiple delinquent notices;

5       b.   Losing multiple properties due to tax lien foreclosures;

6       c.    Losing multiple properties due to failure to pay condominium association fees;

7       d.   Failure to respond or defend against foreclosure proceedings in multiple states;

8       e.   Failure to service USHR's accounts, and instead falsely direct tenants to third-party

9            servicers who were not servicers for that account; and

10      f.   Allowing USHR's subsidiaries to file materially false tax returns;

11      g.   Failing to object to foreclosure sales;

12      h.   Repeated failure to pay homeowner's association fees;

13      i.   Repeated failure to pay utility bills;

14      j.   Undertaking no serious effort to have FTE's stock relisted;

15      k.   Failing to pursue appropriate audited financials;

16      l.   Failing to file and/or timely file forms required by the SEC and its regulations;

17      m.  Failing to adequately staff FTE;

18      n.   Filing frivolous litigation, while simultaneously failing to defend against and/or

19           pursue meritorious legal claims;

20      o.   Refusing and/or failing to negotiate directly with FTE's largest lenders;

21      p.   Failing to pay assumed obligations, resulting in defaults, litigation and a loss of

22           assets,

23      q.   Failing to abide by contractual obligations to pay the purchase price for FTE assets,

24           creating  a threat of these transactions being rescinded;

25      r.   Failing to create a business and/or operations budget;

26      s.   Failing to implement management sufficient to manage FTE's operations and

27           oversee (a) collections, (b) payoffs, (c) sales, (d) tax delinquencies, (e)

28           rehabilitations and/or repairs of properties, (f) appraisals, and (g) investor reporting;

27154001.1/057702.0001

and

t.  Failing to comply with basic  corporate governance principals, by refusing to respond to shareholder's inquiries, by refusing to hold shareholder meetings, by prohibiting FTE's sole independent director from communicating with shareholders, by failing to issue adequate shareholder updates, and by litigating against any shareholder who inquires into the status of FTE;

u.  On information and belief, paying themselves and/or failing to disclose management and officer compensation while working without Compensation Committee approval;

v.  Failing to disclose significant adverse litigation and regulatory actions to shareholders;

w.  Failing to disclose their rampant conflicts of interests and breaches of fiduciary duties;

x.  Failing to disclose the losses of FTE assets to foreclosures and lender actions;

y.  Failing to disclose litigation settlements which will materially affect FTE's net worth; and

z.  Failing to undertake any effort to bring FTE into compliance with NYSE and SEC regulations so that its stock can be publicly traded again.

278.  Beys' and De Silva's breach of the duty of loyalty involves actions of intentional misconduct, including, but not limited to, intentional dereliction of duties, false representations, material omissions and/or material misrepresentations in court filings, and false, inaccurate, misleading and incomplete public filings such that Beys and De Silva are personally liable pursuant to NRS 78.138(7).

279.  FTE's shareholders have been directly damaged in excess of $75,000 as a result of Beys' and De Silva's breach of the duty of loyalty.

280.  Due to the pending litigation verified by Beys, and shareholder updates issued by Beys, and the expulsion of Cunningham from meetings of the directors, a demand upon the board of directors to bring this claim on behalf of FTE is and would be futile.

37

281.   At all times, Beys and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

282.   Plaintiffs have been forced to retain counsel to enforce FTE's shareholders' rights, and are entitled to an award of its reasonable attorney fees and costs.

### FOURTH CLAIM FOR RELIEF
### (Beys and De Silva – Abuse of Process)

283.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

284.   By initiating litigation on behalf of FTE against Plaintiffs in New York, and by making multiple material false, inaccurate and/or misleading statements to courts in New York and Nevada, as well as by questionably defending and/or prosecuting the New York and Nevada lawsuits, Beys and De Silva had an ulterior purpose other than resolving a legal dispute.

285.   Specifically, Beys' and De Silva's ulterior purpose was to protect the Benchmark transaction and/or allow De Silva to execute his loan-to-own scheme on the Vision Portfolio.

286.   Beys' and De Silva's ulterior purpose was to delay and/or prevent shareholders from calling a shareholder meeting, such that Beys and De Silva can remain in control long enough to execute De Silva's scheme on the Vision Portfolio.

287.   Beys' and De Silva's willful use of process was not proper in the regular conduct of the proceedings, in that Beys and De Silva authorized and/or verified multiple filings containing false or materially misleading statements.

288.   Plaintiffs have been directly damaged in excess of $75,000 as a result of Beys' and De Silva's breach of the duty of loyalty.

289.   At all times, Beys and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

290.   Plaintiffs have been forced to retain counsel to enforce their rights, and are entitled to an award of its reasonable attorney fees and costs.

### FIFTH CLAIM FOR RELIEF
### (Beys – Aiding and Abetting Breach of Fiduciary Duty)

291.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

27154001.1/057702.0001

292.   At all times, Beys knew that De Silva owed Plaintiffs a fiduciary duty and that De Silva breached that duty by, among other things, foreclosing on Benchmark, attempting to dilute Plaintiffs' voting rights, and/or engaging in specious self-dealing to the detriment of Plaintiffs.

293.   Beys has aided and abetted De Silva's breaches of fiduciary duty by, among other things:

      a.   On information and belief, encouraging private parties and/or public authorities to prosecute claims against Plaintiffs;

      b.   Initiating, authorizing and verifying frivolous and specious litigation against Plaintiffs in multiple jurisdictions; and

      c.   Refusing to abide by corporate formalities, including calling a shareholder meeting.

294.   Beys is aware that his conduct substantially and directly assists De Silva in breaching his fiduciary duties to Plaintiffs.

295.   Plaintiffs have been damaged in an amount in excess of $75,000 as a result of Beys' conduct.

296.   At all times, Beys conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

297.   Plaintiffs have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Civil Conspiracy)

298.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

299.   At all times, Beys and De Silva have acted in concert to obtain the unlawful objective of plundering FTE's assets for their own personal gain, to the direct detriment of Plaintiffs, shareholders of FTE.

300.   Beys and De Silva have engaged in multiple concerted efforts to protect and/or accomplish their unlawful scheme, including, but not limited to:

      a.   Abuse of control of FTE;

      b.   Refusing to recognize the rights of FTE's shareholders;

27154001.1/057702.0001

c.   Filing materially false and fraudulent SEC filings;

d.   Filing multiple lawsuits containing false and misleading allegations;

e.   Undertaking multiple efforts to dilute the franchise of Plaintiffs.

301.   Beys' and De Silva's conduct has been expressly aimed at harming Plaintiffs.

302.   Plaintiffs have been damaged in an amount in excess of $75,000 as a result of Beys' conduct.

303.   At all times, Beys' and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

304.   Plaintiffs have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Fraud- Beys)**

305.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

306.   Beys has knowingly and intentionally made multiple materially false and misleading statements, many of which were made under oath.

307.   Beys materially misrepresented the extent of FTE's knowledge of the Vision Portfolio, the extent of FTE's due diligence, and/or the real reasons Beys initiated the New York litigation against Plaintiffs.  These misrepresentations were made under oath to a court of law.

308.   Beys materially misrepresented the extent of FTE's knowledge of the Vision Portfolio, the extent of FTE's due diligence, and/or the real reasons Beys is refusing to call a shareholder meeting to the Nevada court.  The misrepresentations were made under oath to a court of law.

309.   Beys filed a materially misleading 8-K in May 2022, which neglected to inform FTE shareholders that a receiver had been appointed over a subsidiary, something which the SEC requires a company to report within four days.  Beys omitted to inform FTE's shareholders that Innovativ sought a shareholder meeting, or that the Nevada litigation existed at all, and instead repeated his false allegations about the litigation he filed and verified.

310.   When Beys made these statements he knew they were materially false and/or

1   misleading.

2       311.   Beys' statements were made with the intent to hinder and/or induce Plaintiffs to

3   refrain from challenging Beys' and De Silva's abuse of control.

4       312.   Plaintiffs have been damaged in an amount in excess of $75,000 as a result of Beys'

5   conduct.

6       313.   At all times, Beys' and De Silva's conduct was done wantonly, fraudulently,

7   maliciously and/or oppressively, such that an award of punitive damages is appropriate.

8       314.   Plaintiffs have been forced to retain counsel and are entitled to a reasonable award

9   of attorney fees and costs.

10
11                          **EIGHTH CLAIM FOR RELIEF**
                                  **(Accounting)**

12      315.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

13      316.   On information and belief, Beys and De Silva have not undertaken any effort to

14  update FTE's financials, to protect FTE's financial position and/or to maintain FTE's assets.

15      317.   As shareholders, Plaintiffs are entitled to know the financial status of the company

16  in which they have invested, yet Beys and De Silva refuse to provide this information.

17      318.   Accordingly, Plaintiffs request an accounting of FTE so that Plaintiffs can ascertain

18  the true extent of their financial harm.

19      319.   Plaintiffs have been forced to retain counsel and are entitled to a reasonable award

20  of attorney fees and costs.

21
22                          **NINTH CLAIM FOR RELIEF**
                               **(Injunctive Relief)**

23      320.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

24      321.   As a result of Beys' and De Silva's corporate mismanagement, and demonstrated

25  commitment to do virtually anything, including, but not limited to, lying under oath, to protect

26  their interests above the interests of FTE and its shareholders, Plaintiffs face a risk of imminent

27  harm that Beys and De Silva will undertake additional efforts to minimize FTE's value, to jettison

28  assets, and/or to further disenfranchise shareholders by diluting stock rights and/or value.

322.    This harm cannot be remedied by an award of damages.

323.    Plaintiffs are entitled to an injunction prohibiting Beys and De Silva from undertaking any effort to minimize FTE's value, to jettison assets, and/or to further disenfranchise shareholders by diluting stock rights and/or value.

324.    The balance of the public interest weighs in favor of Plaintiffs' request and against Beys' and De Silva.

325.    Plaintiffs have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**TENTH CLAIM FOR RELIEF**
**(Appointment of a Receiver)**

326.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

327.    Plaintiffs hold 1/10 of the stock of FTE.

328.    Plaintiffs request that this Court restrain FTE from exercising any of its powers and doing business whatsoever, except by and through a receiver appointed by this Court because, among other things,

    a.  FTE's directors, as set forth above, have been guilty of fraud or collusion or gross mismanagement in the conduct and control of its affairs;

    b.  FTE's directors have been guilty of malfeasance, misfeasance and nonfeasance;

    c.  FTE is unable to conduct the business or conserve its assets by reason of the act, neglect or refusal to function of any of the directors or trustees;

    d.  FTE has abandoned its business;

    e.  On information and belief, FTE has become insolvent; and

    f.  If not solvent, FTE is unable to pay its debts or other obligations as they mature.

329.    Accordingly, good cause exists for appointment of a receiver pursuant to NRS 78.650.

330.    Plaintiffs have been forced to retain counsel, and are entitled to an award of their attorney fees and costs.

///

42

27154001.1/057702.0001

## ELEVENTH CLAIM FOR RELIEF
### (TTP8 v. De Silva – Violation of Rule 10b-5)

331.    TTP8 incorporates the preceding paragraphs as if fully set forth herein.

332.    De Silva, while acting as a director of FTE, had multiple conversations with TTP8 and/or its former manager Singal, in which De Silva represented that FTE intended to develop and increase the profitability of the Vision Portfolio.

333.    Relying upon De Silva's representations, TTP8 agreed to purchase FTE shares and facilitate a debt cancellation for FTE, believing that FTE would be a lucrative investment based upon De Silva's statements.

334.    Unbeknownst to TTP8, FTE was virtually bankrupt at the time that De Silva made these representations, with no ability to actually purchase the Vision Portfolio, maintain it, or invest in it to increase FTE's shareholder's profits.

335.    De Silva was fully aware of FTE's financial situation at the time he made these statements.

336.    Unbeknownst to TTP8, De Silva made these false representations because he wanted to alleviate Benchmark's $7,000,000 obligation to FTE which obligation, but for De Silva's scheming, may have actually provided value to FTE shareholders.

337.    De Silva's statements turned out to be completely false, a fact of which De Silva knew or should have known at the time it induced TTP8 to purchase FTE shares, and FTE has in fact done nothing to increase the profitability of the Vision Portfolio.  To the contrary, FTE has allowed this asset to largely be wasted.

338.    TTP8 discovered De Silva's misstatements in early 2022, when De Silva's and Beys' mismanagement of the Vision Portfolio came to light in the Pennsylvania and Nevada litigation and TTP8 became aware that De Silva knew and/or should have known that FTE would not, and never intended to, increase the profitability of the Vision Portfolio.

339.    TTP8 reasonably relied upon De Silva's representations because FTE appeared profitable on paper, was publicly traded at the time of TTP8's purchase of stock, and TTP8 had no reason to believe that De Silva would violate his fiduciary duties in such a manner as to eliminate

FTE's liquidity.

340.   As a direct result of De Silva's misrepresentations, malfeasance, misfeasance and/or nonfeasance, however, FTE has lost virtually all liquidity, resulting in a financial loss to TTP8 in excess of $75,000.

341.   TTP8 has been forced to retain counsel, and is entitled to an award of its reasonable attorney fees and costs.

**TWELFTH CLAIM FOR RELIEF**
**(Plaintiffs, Derivatively v. Lateral Entities – Constructive Trust)**

342.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

343.   On information and belief, the Lateral Entities, either jointly or separately, and either all or any one of them, holds legal title to Benchmark, which title formerly belonged to FTE.

344.   Plaintiffs are shareholders of FTE, and TTP8 was a shareholder at the time that FTE formerly owned Benchmark.

345.   FTE is, in good conscience, entitled to be the legal owner of its former interest in Benchmark.

346.   A confidential relationship exists between FTE and the Lateral Entities, such that the Lateral Entities', or any one of theirs', retention of Benchmark is inequitable and unjust, and the Lateral Entities, or any one of theirs, retention of Benchmark was obtained without sufficient consideration and/or as a product of fraud or undue influence.

347.   A constructive trust upon the Lateral Entities', or any one of their, interest in Benchmark is essential to the effectuation of justice.

348.   A demand upon FTE's directors is futile because the Lateral Entities are controlled in whole or in part by De Silva, and De Silva's conduct has been, at all times, to protect the Lateral Entities' interests over the interests of FTE's other shareholders, as set forth in the complaint above.

349.   Plaintiffs have been forced to retain counsel, and are entitled to an award of their reasonable attorney fees and costs.

///

1

## **JURY DEMAND**

2

Pursuant to Rule 38(b), Plaintiffs demand that this matter be tried by jury.

3

4

WHEREFORE, Plaintiffs prays for relief as follows:

5      1.      For direct and derivative damages according to proof;

6      2.      For an award of punitive damages;

7      3.      For injunctive relief;

8      4.      For an accounting;

9      5.      For appointment of a receiver;

10      6.      For a constructive trust placed over Benchmark;

11      7.      For an award of Plaintiffs' reasonable attorney fees and costs; and

12      8.      For such other relief as this Court deems just and appropriate.

13

## **AFFIRMATION**

14

15      The undersigned affirms that this document does not contain the social security number

16  of any person.

17  Dated:  July 22, 2022                        FENNEMORE CRAIG, P.C.

18                                                       /s/ Therese M. Shanks
                                                         Therese M. Shanks, Esq. (SBN 12890)
19                                                       Wade Beavers, Esq. (SBN 13451)
                                                         FENNEMORE CRAIG, P.C.
20                                                       7800 Rancharrah Parkway
                                                         Reno, Nevada 89511
21

22                                                       -AND-

23                                                       Andrew K. Stuztman, Esq. (PA Bar No. 72922)
                                                         Adam Petitt, Esq. (PA Bar No. 319609)
24                                                       Stradley Ronon Stevens & Young, LLP
                                                         2005 Market Street, Ste. 2600
25                                                       Philadelphia, PA 19103-7018
                                                         *Pro Hac Vice Pending*
26

27

28

27154001.1/057702.0001